[Docket No. 30]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

ARLENE REGANATO,

    Plaintiff,

       v.

APPLIANCE REPLACEMENT INC.
d/b/a MULTI-HOUSING DEPOT and
JOHN DOES 1-5 AND 6-10,

    Defendants.

Civil No. 15-6164 (RMB/JS)

**OPINION**

APPEARANCES:

Drake P. Bearden, Jr., Esq.
Kevin M. Costello, Esq.
Costello & Mains, P.C.
18000 Horizon Way, Suite 800
Mount Laurel, NJ 08054
    *Attorneys for Plaintiff Arlene Reganato*

Lawrence Brent Berg, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
P.O. Box 5049
Cherry Hill, NJ 08002
    *Attorney for Defendant Appliance Replacement Inc.
    d/b/a Multi-Housing Depot*

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon the Motion for

Summary Judgment by Defendant Appliance Replacement, Inc. d/b/a

Multi-Housing Depot (the "Defendant") [Docket No. 30], seeking

the dismissal of the Complaint by Plaintiff Arlene Reganato (the

1

"Plaintiff").  For the reasons set forth herein, Defendant's
Motion for Summary Judgment will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired by Defendant in June 2005 and performed
largely payroll functions.  Reganato Dep. Tr. 25:17-24, Civ. A.
No. 14-7716 (RBK/JS) [Docket No. 33-1, Ex. A].  By 2012,
Plaintiff had more responsibilities and performed both payroll
and human resources roles for the Defendant.  Id. 26:9-24.  In
2014, Plaintiff had at least some role in ensuring that
Defendant's health insurance premiums and bills were paid.
Reganato Dep. Tr. 60:10-19 [Docket No. 30-4].  For example, she
was responsible for reconciling and submitting the payments, as
well as preparing the check requisition.  Id. 60:21-61:14.

In July 2014, another employee at Appliance Replacement,
Christopher McGuigan, was out on FMLA leave.  According to
Plaintiff, Mr. McGuigan's supervisor told Plaintiff that she
wanted to terminate Mr. McGuigan's employment, but that
Plaintiff opposed his termination because he was out on FMLA
leave.  Pl. Answer to Interrogatory 4 [Docket No. 33-1, Ex. B].
Mr. McGuigan returned to work around August 2014 and was
subsequently terminated.  Id.  Thereafter, on November 5, 2014,
Mr. McGuigan filed a lawsuit against Defendant alleging that he
was terminated in violation of the FMLA and NJLAD.  McGuigan
Compl., Civ. A. No. 14-7716 (RBK/JS) [Docket No. 33-1, Ex. D].

Plaintiff testified that, in late 2014, Edward Bell, one of Defendant's owners, told her to terminate another employee, Kelly Radomski, who was out on FMLA leave.  According to Plaintiff, she told Mr. Bell that she opposed Ms. Radomski's termination, which she believed was unlawful given that Ms. Radomski was out on FMLA leave.  Reganato Dep. Tr. 106:1-9; 124:2-24.  Mr. Bell, on the other hand, testified that it was Plaintiff's idea to terminate Ms. Radomski's employment. E. Bell Dep. Tr. 52:4-54:4 [Docket No. 30-5].  Ultimately, the decision was made to discharge Ms. Radomski, and Plaintiff drafted her termination letter on December 15, 2014.  Pl. SOMF ¶ 29 [Docket No. 33].

Plaintiff claims that, after she protested Mr. McGuigan and Ms. Radomski's terminations, which she believed were unlawful, she was no longer permitted to work overtime or during lunch, her bonus was reduced, and her workload increased.  Reganato Dep. Tr. 93:5-94:9.  Plaintiff testified that she believes her 2014 bonus was $5,000, but that she did not recall what it had been in years prior.  Id. 96:21-97:9.  She did not remember if there was a change in bonuses for everyone in 2014, but she knew that some people's bonuses did not get cut.  Id. 97:13-25. According to Plaintiff, she was told that she could no longer work overtime or work through lunch.  She did not know, however, whether or not other employees received the same limitations.

3

Id. 94:21-96:14.  Additionally, Plaintiff testified that Edward Bell told her that Defendant would not buy back her unused paid time off ("PTO").  She does not know, however, whether this decision applied to other employees as well or whether it was a company-wide policy.  Id. 100:8-21.  Mr. Bell testified that Defendant did not buy back unused PTO from its employees. E. Bell Dep. Tr. 23:1-9.

On December 16, 2014, Defendant's health insurance for its employees lapsed due to nonpayment.  An employee told Defendant's part-owner, Matthew Bell, that he had gone to pick up his medications but that his health insurance had been denied.  M. Bell Dep. Tr. 17:17-18:18 [Docket No. 30-6]. The following day, another employee reported to Defendant's Controller, Ginger Gallagher, that his insurance had also been denied at the pharmacy.  Gallagher Dep. Tr. 9:10-16 [Docket No. 30-7].  Yet another employee expressed concerns to Al Clelland, Defendant's Distribution Manager, about how the cancellation would affect his wife's ability to obtain and pay for her cancer treatments.  Clelland Dep. Tr. 19:20-20:8 [Docket No. 30-9].

Plaintiff was informed that the insurance had been cancelled via email from Defendant's insurance broker on the evening of December 16, 2014.  Reganato Dep. Tr. 67:21-25; December 16, 2014 Email [Docket No. 33-2, Ex. P].  Plaintiff

4

claims that she did not know that the insurance would lapse if it was not paid by a certain time.  Pl. SOMF ¶ 56.  Defendant disputes this.  Sue Duffner, Defendant's IT Manager, testified that Defendant's insurance broker informed her that she had told Plaintiff in early December 2014 that the insurance would be canceled if the insurance was not timely paid.  Duffner Dep. Tr. 40:4-11 [Docket No. 30-10].  Likewise, Matthew Bell testified that Plaintiff did not pay the insurance premium "when notified multiple times from our broker."  M. Bell Dep. Tr. 17:9-12.  Regardless, on December 17, 2014, Ms. Gallagher contacted the insurance company at Mr. Bell's instruction and thereafter submitted the overdue payments on Defendant's behalf so that the insurance could be reinstated.  Gallagher Dep. Tr. 9:17-10:22.

Plaintiff explained that she did not make the insurance payment because of "an oversight" as she was very busy. Reganato Dep. Tr. 64:6-22.  She recognizes, however, that she was at "some" fault for the insurance lapsing.  Id. 84:17-85:2. Two days later, on December 19, 2014, Plaintiff was terminated. At that time, Plaintiff was told by Matthew Bell that her termination was the result of her failure to timely pay the insurance bill.  Pl. SOMF ¶¶ 65-67; Def. SOMF ¶ 23 [Docket No. 30-1].  Plaintiff concedes that she should have been disciplined for her involvement in the insurance lapsing; however, she

disagrees with Defendant's decision to terminate her.   Reganato
Dep. Tr. 84:24-87:11.

Based upon these facts, Plaintiff claims that Defendant has
unlawfully retaliated against her for her opposition to
Mr. McGuigan and Ms. Radomski's terminations.   On or about
June 22, 2015, Plaintiff commenced the instant litigation in the
Superior Court of New Jersey, Camden County, Law Division,
setting forth the following counts: retaliation in violation of
the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A.
§ 10:5-12(d) (Count I); retaliation in violation of the Family
and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.
(Count II); and a request for equitable relief (Count III)
[Docket No. 1-1].   Defendant removed the action to federal court
on August 12, 2015 [Docket No. 1].   Defendant now moves for
summary judgment and the dismissal of Plaintiff's Complaint in
its entirety.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."   Fed. R.
Civ. P. 56(a).   A fact is "material" if it will "affect the
outcome of the suit under the governing law[.]"   Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute is

"genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party."  Meyer v. Riegel Prods. Corps., 720 F.2d 303, 307 n. 2 (3d Cir. 1983).  However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial.  Anderson, 477 U.S. at 252. Furthermore, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them.  Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ.

7

P. 56(c)).  Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for
trial.'"  Anderson, 477 U.S. at 250 (citing Fed. R. Civ.
P. 56(e)).  The nonmovant's burden is rigorous: she "must point
to concrete evidence in the record"; mere allegations,
conclusions, conjecture, and speculation will not defeat summary
judgment.  Orsatti v. New Jersey State Police, 71 F.3d 480, 484
(3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d
Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc.,
561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture
may not defeat summary judgment.")).

### III. ANALYSIS

Under NJLAD, it is unlawful "[f]or any person to take
reprisals against any person because that person has opposed any
practices or acts forbidden under" NJLAD.  N.J.S.A. § 10:5-
12(d).  Similarly, the FMLA provides that "[i]t shall be
unlawful for any employer to discharge or in any other manner
discriminate against any individual for opposing any practice
made unlawful by" the FMLA.  29 U.S.C. § 2615(a)(2).  The Court
will consider Plaintiff's NJLAD and FMLA retaliation claims
together in light of the substantially similar showings
required.

Retaliation claims under both the FMLA and NJLAD are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Capps v. Mondelez Glob., LLC, --- F.3d ----, 2017 WL 393237, at *5 (3d Cir. Jan. 30, 2017) (FMLA retaliation); Michaels v. BJ's Wholesale Club, Inc., 604 F. App'x 180, 182 (3d Cir. 2015) (NJLAD retaliation).  Under this framework, a plaintiff must first establish a prima facie case of retaliation.  Ross v. Gillhuly, 755 F.3d 185, 193 (3d Cir. 2014).

To establish a prima facie case of retaliation under NJLAD, a plaintiff must demonstrate that she "engaged in a protected activity that was known to the employer, that [she] was subjected to an adverse employment decision, and that there is a causal link between the activity and the adverse action."  LaPaz v. Barnabas Health Sys., 634 F. App'x 367, 369 (3d Cir. 2015) (citing Battaglia v. United Parcel Serv., Inc., 213 N.J. 518, 547 (2013)).  Similarly, to establish a prima facie case of retaliation in violation of the FMLA, a plaintiff must show that: (1) she invoked an FMLA right, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights.  Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 256 (3d Cir. 2014); Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).

Once the plaintiff has established a prima facie case, "the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions.  If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely pretext for the discrimination or retaliation." Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016).

A plaintiff can demonstrate pretext and, therefore, withstand a motion for summary judgment by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  "Moreover, a 'plaintiff cannot simply show that the employer's decision was wrong or mistaken' to prove pretext; rather, the 'plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] nondiscriminatory reasons.'" Ross, 755 F.3d at 194 n. 13

10

(quoting Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 331 (3d Cir. 1995) (quoting Fuentes, 32 F.3d at 765)).

### A. Prima Facie Case

#### i. Protected Activity/Invocation of FMLA Right

Under both the FMLA and NJLAD, it is unlawful to retaliate against any person for opposing practices unlawful under the FMLA and NJLAD. 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."); N.J.S.A. § 10:5-12(d) ("It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: . . . [f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act . . . ."). Although the parties gloss over whether these statutory provisions apply to Plaintiff's alleged actions, it appears on the face of the statutes that they do apply to Plaintiff's alleged opposition to Mr. McGuigan and Ms. Radomski's terminations.

Defendant contends that Plaintiff is unable to establish a prima facie case of retaliation because there is no "competent evidence indicating that she engaged in any protected activity known to her employer other than her self-serving statements that she did not want to terminate either Mr. McGuigan or Ms. Radomski at any time." Def. Br. at 7 [Docket No. 30].

While the Court agrees that there is no evidence aside from Plaintiff's deposition testimony to support her position that she opposed Mr. McGuigan and Ms. Radomski's terminations as unlawful, her testimony -- which can be said to be discredited by Edward Bell's testimony, but not "utterly discredited," see Scott, 550 U.S. at 380, as it entails a conflict between the deposition testimony of the two individuals -- raises, ever so slightly, a question of fact as to whether she engaged in a protected activity by protesting Mr. McGuigan and Ms. Radomski's terminations while they were on FMLA leave.

### ii. Adverse Employment Decision

The next element which Plaintiff must show to establish a prima facie case of retaliation under the FMLA and NJLAD is an adverse employment decision.  The parties have not directly addressed whether the actions Plaintiff alleges she suffered constitute actionable adverse employment decisions.  Rather, the parties focus on whether there is sufficient evidence in the record to establish that the alleged actions occurred.  Nonetheless, the Court must next determine whether Plaintiff suffered adverse employment actions.

First, it is important to note that Plaintiff clearly suffered an adverse employment action when she was terminated on December 19, 2014.  The parties do not dispute this.  Plaintiff, however, appears to allege that she suffered earlier adverse

employment actions after she objected to Mr. McGuigan and
Ms. Radomski's terminations, but prior to her discharge.  It is
this latter part of Plaintiff's case that the Court now
addresses.

Not every unwelcome employment decision is actionable.
Instead, "[a]n adverse employment action is one which is serious
and tangible enough to alter an employee's compensation, terms,
conditions, or privileges of employment." Fiorentini v. William
Penn Sch. Dist., --- F. App'x ----, 2016 WL 7338428, at *4
(3d Cir. Dec. 16, 2016) (quoting Cardenas v. Massey, 269 F.3d
251, 263 (3d Cir. 2001)).  Plaintiff claims that, after she
objected to Mr. McGuigan and Ms. Radomski's terminations,
Defendant no longer let her work overtime or through lunch, did
not buy back one week of unused PTO, reduced her annual bonus,
and increased her workload.  Apparently, Plaintiff contends that
these are each independent adverse employment actions.  For the
following reasons, the Court disagrees.  To the extent
Plaintiff's claims are premised upon these actions, they must be
dismissed as there is no evidence in the record that these
decisions were sufficiently serious and tangible to change
Plaintiff's compensation, terms, conditions, or privileges of
employment.

As to overtime, there is no evidence in the record that
establishes that Defendant's decision not to let Plaintiff work

overtime or through lunch seriously and tangibly affected her
compensation or employment.  For example, there is no evidence
in the record that Plaintiff ever actually attempted to work
overtime or through lunch and was denied.  In fact,
Ms. Gallagher, testified that Plaintiff never discussed the need
to work overtime with her.  Gallagher Dep. Tr. 34:4-19.
Additionally, there is no evidence as to how often Plaintiff had
previously worked overtime or through lunch before her alleged
protected activity and how Plaintiff's compensation changed once
she was no longer able to do so.  Furthermore, it is unclear how
long this decision affected Plaintiff.  At most, Plaintiff was
not permitted to work overtime or through lunch from July or
August 2014, when she supposedly objected to Mr. McGuigan's
termination, until her own termination in December 2014.  The
loss of some indeterminate and speculative overtime
opportunities over the course of at most a few months does not
constitute an actionable adverse employment decision.  See Swain
v. City of Vineland, 457 F. App'x 107, 111 (3d Cir. 2012).

     The Court next turns to Plaintiff's allegation that
Defendant reduced her annual bonus in 2014.  As a preliminary
matter, there is no evidence that Plaintiff was entitled to a
bonus of the same amount as previous years.  In any case, there
is no evidence that Plaintiff's bonus was even reduced
significantly except for Plaintiff's own conclusory deposition

testimony that her "bonus was cut in half" and her unsupported opinion that the reduction was "material," as Plaintiff cannot recall what her bonus had been in previous years.  Reganato Dep. Tr. 93:10-11; 96:14-97:9.  This is, at most, a scintilla of evidence, which is insufficient standing alone to raise a triable issue of fact.  Anderson, 477 U.S. at 252.  Accordingly, the Court finds that Plaintiff cannot establish that any reduction in her bonus was an actionable adverse employment decision that was serious and tangible enough to change her compensation, terms, conditions, or privileges of employment.

Furthermore, Plaintiff has not established that Defendant's alleged decision not to buy back one week of her unused PTO, especially in light of Defendant's policy not to buy back PTO, was serious and tangible enough to alter her compensation, terms, condition, or privileges of employment.  Finally, Plaintiff merely alleges that her workload increased and that she was very busy.  There is no evidence that supports her claims that her workload increased after she objected to Mr. McGuigan and Ms. Radomski's terminations or how the increase altered her terms, conditions, and privileges of employment. Moreover, Plaintiff's allegations that her workload increased, without more, do not rise to the level of an adverse employment action.  See Fitzgerald v. Shore Mem'l Hosp., 92 F. Supp. 3d 214, 240-41 (D.N.J. 2015).

### iii. Causation

Even assuming that Plaintiff can establish the other elements of the prima facie case, Defendant argues that Plaintiff has adduced no evidence of causation between any protected activities and her termination or any other adverse employment action.  "To demonstrate a prima facie case of causation, [a plaintiff] must point to evidence sufficient to create an inference that a causative link exists between her [protected activity] and her termination." Lichtenstein, 691 F.3d at 307.  "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'  Where the temporal proximity is not 'unusually suggestive,' [courts] ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" Id. (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)) (internal citation omitted).

The Court agrees with Defendant that Plaintiff has failed to establish a causal link between Plaintiff's purported protected activity and any of the events Plaintiff contends should be considered adverse employment decisions.  For ease of the record, the Court addresses the lack of causal link between

Plaintiff's opposition to Mr. McGuigan and Ms. Radomski's terminations and each of these alleged adverse events.

As a general matter, the Court notes that there is no evidence from which to assess the temporal proximity between Plaintiff's alleged protected activity and the alleged adverse employment actions, other than Plaintiff's termination. Moreover, Plaintiff has identified no other evidence in the record from which a reasonable jury could infer an unlawful motive for these decisions.

The Court first addresses Plaintiff's contention that Defendant did not permit her to work overtime or through lunch after she opposed Mr. McGuigan and Ms. Radomski's terminations. Plaintiff, however, has not identified when Defendant stopped permitting her to work overtime or through lunch or when any request to do so was denied.  Additionally, looking at the record as a whole, there is no evidence from which to infer causation.  Ms. Gallagher explained that Defendant's company-wide policy required Defendant's employees to obtain management approval before working overtime.  Gallagher Dep. Tr. 14:20-15:6.  Furthermore, Ms. Gallagher testified that she did not permit Plaintiff to work overtime because Defendant had no need for Plaintiff to do so and Plaintiff had not "justified" why she needed to work overtime.  Indeed, Ms. Gallagher noted

that Plaintiff never discussed the need to work overtime with
her.  Gallagher Dep. Tr. 34:2-36:3.

Plaintiff also avers that her 2014 bonus was significantly
reduced.  While Plaintiff testified that she received this
reduced bonus in December 2014, there is no evidence regarding
when the bonus decision itself was made.  Moreover, there is no
evidence in the record that suggests a causal link between the
decision to decrease her bonus and her alleged protected
activity.  Likewise, there is no evidence in the record that
demonstrates when Plaintiff's workload purportedly increased or
that any increase in her workload was causally related to her
objections to Mr. McGuigan and Ms. Radomski's terminations in
July or August 2014 and December 2014, respectively.

The Court next turns to Plaintiff's claim that Defendant
decided not to buy back one week of her unused PTO.  Plaintiff
has not established when this decision was made, let alone that
there was any unusually suggestive temporal proximity between
such decision and her opposition to Mr. McGuigan and
Ms. Radomski's terminations.  What's more, the evidence as a
whole does not support any inference of causation.  Rather, as
Edward Bell testified, the evidence indicates that, per
Defendant's PTO policy, only two days of unused PTO could be
carried over to the following year and, at the time of

Plaintiff's termination, Defendant did not buy back employees'
unused PTO.  E. Bell. Dep. Tr. 22:8-23:16.

Finally, Defendant argues that there is no evidence from
which to infer a causal link between Plaintiff's alleged
protected activity and her termination on December 19, 2014.
Rather, in Defendant's view, the only inference to be gleaned
from the evidence is that Plaintiff's termination was the direct
result of her failure to timely pay Defendant's insurance bill,
which caused Defendant's employees to temporarily lose their
health insurance coverage.  Plaintiff responds that the temporal
proximity between her alleged objection to Ms. Radomski's
termination in early December 2014 and Plaintiff's own
termination on December 19, 2014 is unusually suggestive of
retaliatory motive and, therefore, sufficient to establish
causation.  Plaintiff testified that she complained in early
December 2014 about Ms. Radomski's termination while she was on
FMLA leave and that Ms. Radomski was ultimately terminated on or
around December 15, 2014.  On December 19, 2014, approximately
two weeks after Plaintiff's complaints about Ms. Radomski's
termination and three days after Defendant's insurance lapsed
due to Plaintiff's failure to timely pay the premium, Plaintiff
was terminated.

Without more, the Court cannot find that this temporal
proximity is so unduly or unusually suggestive of retaliatory

motive that it is "sufficient standing alone to create an inference of causality" at the summary judgment stage, especially in light of the intervening insurance payment error. Lichtenstein, 691 F.3d at 307; see also Escanio v. United Parcel Serv., 538 F. App'x 195, 200 (3d Cir. 2013) (finding that period of roughly three weeks between protected activity and termination, without more, is not unduly suggestive of retaliatory motive and cannot establish causal link as required to support prima facie case of NJLAD retaliation); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding that three week period between protected activity and termination was insufficient, without other evidence, to establish required causal link); Malloy v. Intercall, Inc., 2010 WL 5441658, at *19 (D.N.J. Dec. 28, 2010) (granting summary judgment on NJLAD retaliation claim where plaintiff "pointed to no facts supporting her claim that she was terminated in retaliation for her complaint other than merely pointing to the fact that she complained and was terminated approximately two weeks later."). Looking at the record as a whole, there is no other evidence from which a reasonable jury could infer a causal link between Plaintiff's alleged protected activity and her termination.

Accordingly, as Plaintiff has not established a prima facie case of retaliation under the FMLA or NJLAD, summary judgment as

to Plaintiff's FMLA and NJLAD retaliation claims (Counts I-II)
is appropriate.

### B. Articulated Non-Retaliatory Reasons

Even if Plaintiff were able to establish a prima facie case
of retaliation based upon certain adverse employment decisions,
under the McDonnell Douglas framework, the burden would then
shift to Defendant to articulate a legitimate non-retaliatory
reason for its actions.  Tourtellotte, 636 F. App'x at 842.

Here, Defendant articulated that Plaintiff was not
permitted to work overtime or to have her unused PTO bought back
by Defendant due to company-wide policies.  As to overtime,
Defendant explained that its company-wide policy did not permit
employees to work overtime without management approval, as it
was more costly for the company.  Defendant's Controller also
explained that Defendant did not need Plaintiff to work overtime
and that Plaintiff could not justify her supposed need to work
overtime.  Gallagher Dep. Tr. 14:20-15:6; 27:13-28:12; 34:2-19.
Additionally, per Defendant's company-wide PTO policy, employees
were permitted to carry over two days of unused PTO to the
following year.  Defendant, however, did not buy back its
employees' unused PTO.  E. Bell. Dep. Tr. 22:8-23:16.

As to Plaintiff's discharge, Defendant explained that
Plaintiff's employment was terminated on December 19, 2014
because she failed to timely pay Defendant's insurance bills,

which caused its employees' health insurance coverage to temporarily lapse on or about December 16, 2014.  The Court finds that Defendant has carried its burden of articulating legitimate non-retaliatory reasons for its decisions.

### C. **Pretext**

As Defendant has articulated legitimate, non-retaliatory reasons for its actions, the burden shifts back to Plaintiff to establish that the proffered reason is merely pretext for retaliation.  Tourtellotte, 636 F. App'x at 842.  To establish pretext at this stage, "the plaintiff must 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinate cause of the employer's action.'" Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998) (quoting Fuentes, 32 F.3d at 764) (emphasis added).

The Court can readily dispose of Plaintiff's claims as they relate to Defendant's refusal to allow Plaintiff to work overtime and to buy back Plaintiff's unused PTO, as Plaintiff has not set forth any evidence to refute Defendant's proffered non-retaliatory explanations.  Plaintiff does not rebut Defendant's contention that, per company-wide policy, it does not buy back its employees' unused PTO.  In fact, Plaintiff

22

testified that she did not remember whether Defendant's decision was directed only at her or whether it was a company-wide policy. Reganato Dep. Tr. 100:12-21. Similarly, Plaintiff has put forth no evidence to establish that Defendant's reason for not permitting her to work overtime was pretext for retaliation. Plaintiff has identified three employees who were permitted to work overtime, but notes that they perform different functions and responsibilities than she does. Id. 99:16-100:7. Additionally, there is no evidence that these employees had not obtained management approval to work overtime per Defendant's policy. Furthermore, Plaintiff admits that she does not know if any other employees were not permitted to work overtime and that she does not remember speaking to anyone about why she was not permitted to work overtime. Id. 95:14-17; 101:17-102:12.

As to her discharge, Plaintiff argues that she can establish that Defendant's articulated reason is pretext for retaliation because her failure to timely pay the insurance bill was "not sufficient enough to warrant termination given [Plaintiff's] over ten years with Defendant and otherwise unblemished disciplinary record." Pl. Opp. Br. at 8 [Docket No. 33]. In essence, although Plaintiff agrees that some discipline was appropriate for her error, Plaintiff believes the discipline she received, namely termination, was too harsh.

Plaintiff's mere disagreement with Defendant's disciplinary decision is insufficient to satisfy her burden of demonstrating that Defendant's proffered legitimate, non-retaliatory reason for her termination is pretext for retaliation.  Plaintiff cannot defeat summary judgment by "simply show[ing] that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  Fuentes, 32 F.3d at 765.  "[F]ederal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [retaliation]."  Keller v. Orix Credit All., Inc., 130 F.3d 1101, 1109 (3d Cir. 1997) (internal citations and quotations omitted); see also Healy v. N.Y. Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988) ("our inquiry must concern pretext, and is not an independent assessment of how we might evaluate and treat a loyal employee.").

Moreover, Plaintiff has pointed to no evidence that demonstrates that Defendant's proffered reason for her termination -- her failure to timely pay Defendant's insurance bills -- is pretext for retaliation.  Rather, she presents only her own unsupported belief that the discipline she received was unduly severe.  Such "speculation and conjecture may not defeat

24

summary judgment" as this Court "cannot, in this posture, make inferences based on pure supposition." Jackson, 594 F.3d at 226 (citing Acumed, 561 F.3d at 228).

Finally, Plaintiff claims that "[t]here is further evidence of pretext in the weaknesses, implausibilities, inconsistencies, incoherencies, and contradictions in Defendant's explanation why Plaintiff was terminated." Pl. Opp. Br. at 9. Plaintiff notes that some managerial employees testified at their depositions that they reviewed certain email correspondence between Plaintiff and Defendant's insurance broker, while others testified that such correspondence did not exist. Id. at 9-10. Additionally, Plaintiff points out that George Cowden, Defendant's Director of Sales, testified that Matthew Bell told him several employees complained to him about their insurance being denied, while Mr. Bell testified that only one employee complained to him. Id. at 10. These purported inconsistencies are irrelevant to the reason for Plaintiff's termination.

Defendant's employees were, in fact, consistent across the board regarding the reason for Plaintiff's termination: Plaintiff failed to timely pay Defendant's insurance bill and this failure resulted in the temporary cancellation of Defendant's health insurance for its employees. See, e.g., E. Bell Dep. Tr. 13:22-14:3; M. Bell Dep. Tr. 17:6-12; Cowden Dep. Tr. 20:11-22 [Docket No. 30-8]; Clelland Dep. Tr. 18:2-7;

Duffner Dep. Tr. 11:16-12:8.  Whether one or six employees complained about their insurance being denied or whether certain email correspondence was or was not considered is immaterial. Plaintiff does not dispute that the insurance lapsed because she did not timely pay the insurance bill and that she should have been disciplined for this error.  See, e.g., Reganato Dep Tr. 63:21-64:22; 84:24-87:11.  Plaintiff has demonstrated no "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action" from which a reasonable jury could find that Defendant's proffered reason is merely pretext for retaliation. Ross, 755 F.3d at 194 n. 13 (emphasis added).

Accordingly, summary judgment as to Plaintiff's NJLAD and FMLA retaliation claims (Count I-II) is also appropriate for the additional reason that Plaintiff has not met her burden of establishing that Defendant's proffered legitimate, non-retaliatory reason for her termination is merely pretext for retaliation.[1]

---

[1] In addition to the retaliation claims, Plaintiff's Complaint alleges a cause of action for "Equitable Relief" (Count III).  As the equitable relief sought by Plaintiff is premised upon a successful showing of unlawful conduct on Defendant's part and the Court has granted summary judgment in favor of Defendant as to Plaintiff's substantive claims, Count III must be dismissed as well.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in its entirety.  Plaintiff's Complaint is dismissed with prejudice.  An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: February 27, 2017